## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Patricia M.,<br><br>               Plaintiff,<br><br>v.<br><br>Andrew Saul,<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. 18-cv-3462 (DSD/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

David Chermol, 11450 Bustleton Avenue, Philadelphia, PA, 19116, for Plaintiff Patricia M.

Kizuwanda Curtis, Special Assistant U.S. Attorney, Social Security Administration, 1301 Young Street, Suite A702, Dallas, TX 75202, for Defendant Andrew Saul.

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Patricia M. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). The matter is now before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 16, 21]. For the reasons set forth below, the Court recommends denying Plaintiff's motion for summary judgment and granting Defendant's motion for summary judgment.

## I.    BACKGROUND

Plaintiff is a 56-year old woman who has had a difficult life.  (R. 1007.)[1]  She reportedly suffered at least two closed head injuries (R. 872), and has been diagnosed with several mental and physical disorders.

Plaintiff filed for DIB and SSI on August 30, 2013.  (R. 17.)  Plaintiff alleges onset of disability on March 6, 2013, and she has not engaged in any substantial gainful activity since then.  (R. 18, 21.)

Plaintiff's initial applications for benefits were denied in March 2014 and upon reconsideration in November 2014.  (R. 17.)  Plaintiff then received a hearing on her applications in November 2015 and a month later an Administrative Law Judge (ALJ) issued a decision concluding that Plaintiff was not disabled.  (*Id.*)  Plaintiff appealed that determination to the Social Security Administration Appeals Council, which vacated the decision and remanded the case to a different ALJ.  (R. 17.)  Plaintiff received a hearing in front of the second ALJ in August 2017.  (R. 18.)  A month later the ALJ issued an unfavorable ruling. Plaintiff again appealed, and the Appeals Council again vacated the decision and remanded the case for further consideration.  (R. 18.)

Plaintiff had a third hearing on her claims on May 15, 2018.  (R. 17.)  On June 7, 2018, the ALJ issued a written decision denying Plaintiff's application for DIB and SSI. (R. 17–38.)  Following the five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ first determined Plaintiff had not engaged

---

[1]  The Social Security Administrative Record ("R.") is available at ECF No. 11.

in substantial gainful activity since the alleged onset date.  (R. 21.)  At step two, the ALJ

determined Plaintiff had the following severe impairments: posttraumatic stress disorder,

anxiety disorder not otherwise specified and generalized anxiety disorder, major

depressive disorder, cognitive disorder not otherwise specified and unspecified transient

organic mental disorder, dependent personality disorder and borderline personality

disorder, attention deficit hyperactivity disorder, obesity, fibromyalgia, seizure disorder

due to partial epilepsy, cervical degenerative disc disease, carpal tunnel syndrome, and

cannabis abuse.  (R. 21.)  The ALJ found at the third step that none of the impairments

met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P,

appendix 1.  (R. 22.)

At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC).

(R. 25–36.)  As part of that assessment, the ALJ analyzed whether the intensity,

persistence, and limiting effects of Plaintiff's symptoms were as severe as she claimed.

(R. 25–36.)  The ALJ also analyzed and assigned evidentiary weight to numerous

medical sources who opined on Plaintiff's condition.  (R. 29–35.)  The ALJ found

Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b)

and § 416.967(b), with certain limitations.[2]  In light of this RFC, the ALJ concluded

Plaintiff would not be able to perform her past relevant work as a health unit clerk or a

---

[2]  The ALJ found the following to be appropriate restrictions on Plaintiff's work: never climbing ropes, ladders, or scaffolds; never balancing; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling; occasionally reaching overhead; frequently handling and fingering; and no exposure to unprotected heights or hazards.  (R. 25–26.)  In addition, the ALJ found Plaintiff should be limited to work indoors and to simple routine tasks.  (R. 26.)

recreational aide, but that she could perform other work that existed in significant numbers in the national economy, such as an inspector, a bakery line worker, or an assembler.  (R. 36–37.)  However, the ALJ noted that Plaintiff had recently aged into an older age category, at which point there were no longer jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (R. 37.)  Accordingly, the ALJ determined Plaintiff was not disabled before March 6, 2018, but became disabled on that date.  (R. 37.)

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner.  (R. 2.)  Plaintiff then filed this action for judicial review.

Plaintiff raises seven challenges to the ALJ's decision, all of which appear to relate to the ALJ's step four determination of Plaintiff's RFC.  (Pl.'s Mem. Supp. Mot. Summ. J. at 9–10 [Doc. No. 17].)  Since Plaintiff has been deemed disabled beginning on March 6, 2018, the time period most relevant to the Court's consideration of the Commissioner's decision is March 6, 2013 (the alleged onset of disability date) through March 5, 2018.  *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited in the parties' memoranda.  The Court will incorporate the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.    STANDARD OF REVIEW

To meet the definition of disability for DIB and SSI, the claimant must establish

that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

Judicial review of the SSA's denial of benefits is limited to determining whether substantial evidence in the record supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome, or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

## II.    DISCUSSION

### A.    Whether the ALJ Improperly Failed to Account for Concentration as a Functional Limitation

Plaintiff's first challenge is that the ALJ failed to include her difficulty concentrating as a functional limitation at step four.  The SSA has identified four "broad functional areas" in which its ALJs should rate a person's functional limitation in order to evaluate her mental impairments.  20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The ability to "concentrate, persist, or maintain pace" is one of those four areas.  *Id.*  The SSA rates an applicant's degree of limitation on a five-point scale that ranges from no limitation to extremely limited.  *Id.*  A rating of "moderate" is in the middle of the five-point scale.  *Id.*

A number of Plaintiff's medical records discuss Plaintiff's ability to concentrate. (*e.g.*, R. 855, 859, 886, 890, 894.)  State Agency psychologist Ray Conroe, Ph.D., reviewed Plaintiff's medical records and concluded she had "moderate" difficulty in maintaining concentration, persistence, or pace.  (R. 255–56.)  Similarly, Karen Butler, Ph.D., a testifying psychological expert at Plaintiff's August 17, 2017 hearing before the ALJ, concluded that Plaintiff was "moderately impaired" in her ability to "attend and concentrate."  (R. 119.)  The ALJ credited both opinions (R. 33–34) and found that Plaintiff had a "moderate" limitation in her ability to concentrate, persist, or maintain pace.  (R. 24.)

Plaintiff argues, however, that the ALJ did not reflect this limitation in his RFC assessment.  Plaintiff argues this omission is tantamount to the ALJ ignoring medical evidence.  *Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) ("[T]he ALJ is not free to

ignore medical evidence but rather must consider the whole record."). Defendant

responds that an ALJ is not obligated to incorporate every limitation he or she finds (here,

attention and concentration) into the RFC assessment.

Defendant is correct on this point. A limitation found at step three is relevant to

an RFC determination, *Gann v. Colvin*, 92 F. Supp. 3d 857, 884 (N.D. Iowa 2015), but

the RFC determination need not incorporate every limitation because the limitations

assessment is not the same as an RFC assessment. Social Security Ruling (SSR) 96-8p,

1996 WL 374184, at *4 (S.S.A. July 2, 1996) ("The adjudicator must remember that the

limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC

assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of

the sequential evaluation process.") The ALJ's rating of Plaintiff's limitations at step

three is for the purpose of assessing Plaintiff's mental illness, and he is not required to

include every such limitation in his RFC determination at step four. *See Flint v. Colvin*,

Civ. No. 13-cv-1220 (PAM/SER), 2014 WL 2818665, at *27 (D. Minn. June 23, 2014);

*Daniels v. Astrue*, Civ. No. 12-cv-407 (PAM/AJB), 2013 WL 1339350, at *15 (D. Minn.

Feb. 6, 2013), *R. & R. adopted sub nom. Daniels v. Colvin*, Civ. No. 12-cv-407

(PAM/AJB), 2013 WL 1329028 (D. Minn. Apr. 1, 2013).

But, contrary to Plaintiff's assertion, the ALJ *did* account for Plaintiff's limitations

in concentration at step four. He did so by restricting her to only performing "simple

routine tasks." (R. 26.) This restriction adequately accounts for Plaintiff's moderate

limitation in concentration, persistence, or pace. *See Xiong v. Colvin*, 995 F. Supp. 2d

958, 988 (D. Minn. 2014) ("At any rate, based on [Plaintiff]'s moderate limitation as to

concentration, persistence, or pace, the ALJ included in the RFC a limitation to routine, repetitive, and simple work."); *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding that the ALJ's hypothetical, in which Plaintiff's inability to concentrate was accommodated by assigning only "simple, repetitive, routine tasks," was adequate to describe Plaintiff's deficiencies).

The ALJ properly separated his step three findings as to Plaintiff's mental limitations from his RFC analysis. He then properly incorporated those findings— including his finding that Plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace—into Plaintiff's RFC. The Court therefore does not recommend remand on this ground.

**B.    The ALJ's Consideration of Plaintiff's JHL, VI, TE, Wrist Splints and Bipolar Disorder**

Plaintiff briefly argues that the ALJ failed to discuss several of Plaintiff's alleged disorders, including joint hypermobility/laxity (JHL), venous insufficiency (VI), traumatic encephalopathy (TE), and bipolar disorder, and that he also failed to discuss Plaintiff's prescribed wrist splints. (Pl.'s Mem. Supp. Mot. Summ. J. at 14.) Plaintiff is correct that the ALJ did not include an explicit discussion of these disorders, and only briefly mentioned Plaintiff's use of wrist splints in the context of her treatment for carpal tunnel syndrome. (R. 27.) But Plaintiff does not further analyze the evidence with regard to those conditions or otherwise specify how she believes it should have affected her RFC determination.

References to these diagnoses or their related symptoms are sprinkled throughout the record, but they are not the focus of Plaintiff's treatment history.  The ALJ is not required to go down every potential path suggested by Plaintiff's medical records. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). "An ALJ is not required to disprove every possible impairment."  *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Furthermore, Plaintiff does not point to substantial medical evidence that these conditions resulted in functional limitations that support her claim of disability. "Diagnoses alone do not demonstrate the existence of severe impairments."  *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011); *see also Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011); *Martin v. Astrue*, No. 09-cv-1998 (RHK/JJG), 2010 WL 2787437 at *6 (D. Minn. June 7, 2010) ("The mere presence of a medical condition is not per se disabling . . . .  The claimant must also show that the condition causes functional limitations.")  Indeed, it is not even clear from the records that each of these conditions has been the subject of a formal diagnosis.  For example, Plaintiff points to Dr. Moche's Physical Functioning Assessment (R. 1809-10) in support of her argument that Plaintiff's JHL and VI support the medical necessity for a cane.  But Dr. Moche did not identify JHL or VI as a *diagnosis* in that assessment.  (*See* R. 1809 (diagnoses identified as "seizure disorder / GERD / restless leg syndrome / PTSD / tremor / depression anxiety / traumatic encephalopathy.")  He referred vaguely to "joint laxity," although not to VI, in

9

recounting Plaintiff's "symptoms" and "pain," but he did not identify a particular part of the body, nor did he in this report or in any of his progress notes attribute any particular functional limitation to Plaintiff's asserted joint laxity or VI. The Court has reviewed the other medical records identified by Plaintiff as documenting JHL (Pl.'s Mem. Supp. Mot. Summ. J. at 15) and similarly finds primarily descriptions of self-reported symptoms[3] but no objective findings, no formal diagnosis, and no opinion identifying specific functional limitations based on that asserted condition. And the three records to which Plaintiff points in support of her claim of VI all relate to an order for compression stockings for localized edema in her lower legs. (R. 1787, 1791, 1799.) Nothing in the medical records indicates that condition persisted for more than twelve months, was not adequately managed with the stockings, or resulted in any limitations beyond those the ALJ already took into account in determining Plaintiff's RFC.

There is some evidence in the medical records supporting Plaintiff's argument that she has been diagnosed with bipolar disorder, and other evidence supporting her argument that she has been diagnosed with TE. But Plaintiff does not explain how the ALJ's step two findings that Plaintiff had severe impairments of major depressive

---

[3] (*See, e.g.,* R. 1539-40 ("She has been noticing some joint hypermobility in hands, fingers, and hips, with some joint discomfort, she is wondering about some type of inherited disease . . .," but no mention of JHL on the "patient active problem list" or in the physical examination findings).) There are also references to "Hand joint laxity, unspecified laterality" for which Plaintiff was referred to occupational therapy (R. 1547); "Joint hypermobility syndrome involving finger" (R. 1630); and "Joint hyperflexibility" for which Plaintiff was referred to genetics to rule out inherited disorders (which were not subsequently diagnosed) (R. 1634); but again, the physical examination findings in those progress notes do not document the condition.

disorder, a cognitive disorder not otherwise specified, an unspecified transient organic mental disorder, dependent personality disorder and borderline personality disorder, attention deficit hyperactivity disorder, and a seizure disorder due to partial epilepsy, failed to take into account any impairments that may have been associated with bipolar disorder and TE.  More to the point, Plaintiff does not cite substantial evidence that these conditions should have changed how the ALJ evaluated her impairments.  In order for Plaintiff to show she is entitled to a remand for further consideration, she must show not only that the ALJ erred in how he evaluated her impairments, but also that if he had not erred, he might well have reached a different decision and that Plaintiff was therefore "harmed" by the error.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, Byes must provide some indication that the ALJ would have decided differently if the error had not occurred.") (citing *Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008)).  Plaintiff has not made this showing.

Finally as to Plaintiff's use of wrist splints, the ALJ referred to the wrist splints in connection with Plaintiff's impairment of carpal tunnel disorder, and Plaintiff offers no argument whatsoever as to why further consideration was required or how such consideration should have affected the ALJ's assessment of Plaintiff's limitations.

The Court therefore concludes that the ALJ did not err in his consideration of Plaintiff's JHL, VI, TE, and bipolar disorder, or her use of wrist splints.

### C.    The ALJ's Decision to Not Award Benefits for a Closed Period

Plaintiff seeks an award of benefits for the entire period from the alleged onset

date of her disability to the day her benefits began: March 6, 2013 through March 6, 2018.  In the alternative, however, Plaintiff argues she is entitled to a shorter "closed period" of disability, from October 2013 through September 2015.  (Pl.'s Mem. Supp. Mot. Summ. J. at 15.)  Plaintiff is not clear about how she arrived at the October 2013 through September 2015 window.  She states October 2013 was the date of her inpatient psychiatric stay, but that hospitalization started on November 8, 2013 (R. 626).  She also identifies September 2015 as the "date of treating therapist's opinion" but that does not help explain why that date was chosen to bracket the "closed period."  (Pl.'s Mem. Supp. Mot. Summ. J. at 15.)

Plaintiff argues generally that her "psychiatric issues" were particularly limiting during this period, such that she was unable to "maintain regular attendance" at work or to "continuously work 8 hours a day 5 days a week."  (*Id.* at 15–16.)  Plaintiff was hospitalized for one week in November 2013 for suicidal thoughts.  (R. 626, 638.)  Undoubtedly that hospitalization would have caused Plaintiff to be absent from work.  But Plaintiff provides little other evidence of her "absenteeism" during the narrowed time window.  She argues that she was busy "dealing mentally with her unsettling past," "dealing with the symptoms" of her depression, and "wrestling with other mental health symptoms" from her various mental illnesses.  (Pl.'s Mem. Supp. Mot. Summ. J. at 17–18.)  She directs the Court to the treatment notes of her therapist, psychologist, and psychiatrist during this time frame, but fails to explain how those notes support her argument that the ALJ should have awarded benefits for this particular period even though he had concluded she was not disabled during the broader time frame sought by

12

her applications.  (*Id.* at 19–20.)  Without more, the Court cannot conclude that the ALJ

missed something particular to the more limited time frame.  The Court is not required to

comb through the evidence to determine how that evidence might support Plaintiff's

claim.  As the Eighth Circuit has noted, an argument that is not developed is waived.

*Aulston v. Astrue,* 277 F. App'x 663, 664-65 (8th Cir. 2008) (citing *SmithKline Beecham*

*Corp. v. Apotex Corp.,* 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases)).

Accordingly, the Court concludes the ALJ did not err in not determining that

Plaintiff was entitled to a closed period of disability.

**D.    The ALJ's Treatment of Physician Opinion Evidence**

Plaintiff makes two arguments in support of her claim that in assessing her RFC,

the ALJ improperly weighed the opinions of Plaintiff's treating physicians.

**1.    Plaintiff's Medical Need for a Cane**

At step three the ALJ discussed Plaintiff's severe impairments of fibromyalgia and

cervical degenerative disc disease.  (R. 27.)  He then concluded:

> The vast majority of the treatment notes, with rare exceptions, show normal
> gait and station, with no significant tenderness (see, e.g., 2F/47, 41F/16, 19,
> 46F/3, 6, 9).  Neurologically the claimant remains intact (see, e.g., 46F/13).
> Recent records document normal strength, sensation, and reflexes
> throughout, with no gross focal deficits.  Her strength is 5/5 bilaterally
> (46F/17).  She has no other structural low back, hip, or knee problems that
> would affect the ability to stand.  She was prescribed a cane at Exhibit
> 57F/9, but few notes ever show its use (see, e.g., 34F/13) and even her
> function report indicates that she does not use it regularly.  *Consequently,*
> *I am going to specifically find that she has no medical necessity for a cane*
> *but will include that she has to work inside (where OSHA would dictate*
> *floors up to code).*

(R. 27) (emphasis added).  Plaintiff challenges this conclusion and argues that the ALJ

improperly rejected medical evidence that Plaintiff required a cane to walk.

On December 11, 2014,[4] Plaintiff was prescribed a cane with a "retractable ice tip" for "muscle weakness (generalized)." (R. 1793.) The prescription notes that the cane should be replaced every five years. (*Id.*) Lisa Callies, M.D., co-signed the prescription for Plaintiff's treating physician Thomas Miskavige, M.D., and did not refute the form's presumption that Plaintiff's "length of need" of the cane would be for her "lifetime."[5] (*Id.*)[6]

The ALJ acknowledged that Plaintiff was prescribed a cane but concluded that the cane was not medically necessary. That conclusion was based in part on the ALJ's belief that "few notes ever show its use." (R. 27 (citing R. 1398).) This understates the evidence in the record. As early as 2013, Plaintiff's medical providers noted that she was "using a cane to assist for balance" after she suffered a lower back strain. (R. 945; *see also* R. 920.) After the cane was prescribed in December 2014, there are a number of references in the record to Plaintiff's use of her prescribed cane in 2015 (R. 1327, 1358,

---

[4]  The prescription directed to the medical supply company was signed on January 5, 2015, but lists December 11, 2014, as the "Date Ordered." (R. 1793.)

[5]  The form includes the following statement: "Estimated length of need presumed lifetime unless noted here: _____." The line is left blank. (R. 1793.)

[6]  Another document in the record indicates that Dr. Miskavige had previously ordered Plaintiff a cane "for 7 days" on December 2, 2014. (R. 1800.) Plaintiff interprets these two documents as saying that she was prescribed a cane "twice." (Pl.'s Mem. Supp. Mot. Summ. J. at 22.) The Court disagrees. As the forms reference dates that are only nine days apart, it is unclear whether they refer to a single prescription ordered by Dr. Miskavige and subsequently signed on his behalf by Dr. Callies, or whether Dr. Miskavige prescribed a cane for Plaintiff on a "trial" basis for a week and then prescribed it on a long term basis shortly thereafter, but nothing suggests that two separate doctors independently opined as to the medical necessity for a cane.

1359, 1433, 1470, 1716, 1722); in 2016 (R. 1485, 1591, 1927–28); in 2017 (R. 1650, 1810, 1837, 1903, 1913); and in 2018 (R. 1835, 1890).[7]  Granted, there are also numerous records of office visits in which there is no mention of Plaintiff's use of the cane.  (*See, e.g.,* R. 1338, 1419–20, 1424, 1447, 1450, 1454, 1456–57, 1634, 1652–53, 1888.)  Nevertheless, the Court questions whether substantial evidence supports the ALJ's finding that Plaintiff was not using a cane simply because it was not always reported by the medical providers in their notes.

However, even assuming that Plaintiff frequently used her cane, that does not necessarily mean the cane was medically necessary as opposed to simply preferred. Plaintiff must show the cane is medically required by offering medical documentation that (1) demonstrates the cane is necessary to help her walk or stand and (2) describes the circumstances in which the device is needed:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

---

[7]  The ALJ also characterized Plaintiff's own function report as "indicat[ing] that she does not use [the cane] regularly."  The ALJ did not provide a cite for this statement, but the Court has identified three possible sources in the record, from March 2013 (R. 1734), October 2013 (R. 612), and April 2014 (R. 661).  In the March 2013 report, Plaintiff stated she did not use a cane to walk.  (R. 1739.)  The October 2013 report indicated that Plaintiff used a cane only when she had to "walk a long distance."  The report from April 2014 did not discuss the use of a cane at all.  All three reports predate the prescription for a cane, so the Court cannot agree that any of them shed light on the frequency with which Plaintiff used, or needed to use, the cane that was later prescribed for her.

SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). A prescription (or the lack of a prescription) for an assistive device is not necessarily dispositive of the presence or absence of medical necessity, *see, e.g., Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009), but it is important to the ALJ's analysis, *see, e.g., Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014).

The documentation associated with the December 2014 prescription in this case states only that the cane was needed for "muscle weakness (generalized)" but does not describe the circumstances in which it was needed, particularly as they might have borne on work activities. (R. 1793, 1800.) Furthermore, there is relatively little discussion of Plaintiff's muscle weakness in the medical records pre-dating the prescription, and what there is appears to be based on Plaintiff's self-reports, not on objective findings.[8] There is likewise no explanation of what change occurred in Plaintiff's condition between April 2014, when Dr. Miskavige reported that Plaintiff did not require a cane to ambulate (R. 1134), and December 2014, when he prescribed one.

The next medical opinion regarding Plaintiff's need for a cane is dated more than two years later, on April 28, 2017, when another of Plaintiff's treating physicians, Patrick Moche, M.D., reported on a form that Plaintiff needed a cane or other assistive device when "engaging in occasional standing/walking." (R. 1810.) Defendant points out,

---

[8] For example, on November 6, 2013, Nancy Merhew, M.D., noted that Plaintiff had reported a "sense of decreasing muscle strength on the right side of her body and has dropped objects on several occasions." (R. 945). John Damergis, M.D., mentioned on February 25, 2014, that Plaintiff had reported "weakness." (R. 1076). Both notes pre-date Dr. Miskavige's April 2014 opinion that Plaintiff did *not* require a cane to ambulate.

correctly, that Dr. Moche's opinion was reported via "a conclusory checkbox form," which, without more, is of little evidentiary value. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The notes of the April 14, 2017, office visit associated with Dr. Moche's completion of the form reflect that the visit lasted 15 minutes and dealt primarily with Plaintiff's complaint of abdominal pain. (R. 1549 ("She has a disability hearing summer 2017 and is here for completion of the form.").) The notes make no mention of Plaintiff's use of the cane or need for a cane, nor do they describe objective physical findings to support Dr. Moche's opinion about Plaintiff's need for a cane, occasionally or otherwise, for standing or walking. (R. 1547–50.)[9]

Plaintiff argues she needs the cane for more than just muscle weakness, including for "her myalgias, pain in her hip, veering to the right, issues with her unsteady gait, [and] lack of balance." (Pl.'s Mem. Supp. Mot. Summ. J. at 22.) But there is little or nothing in the record that objectively documents those issues or links them to her medical need for a cane. For example, Dr. Moche mentions in his May 18, 2017, progress note (less than a month after he completed the form stating Plaintiff needed a cane) that Plaintiff had reported "balance issues" and that she "typically lean[ed] to the right" (R. 1645), but as the ALJ commented, Dr. Moche's physical examination findings on that

---

[9] Plaintiff also points out that a couple of months after Dr. Moche reported Plaintiff's need for a cane, Plaintiff's chiropractor Lindsey Tevlin, D.C., completed the same form and expressed the same opinion, *i.e.*, that Plaintiff required a cane or other assistive device when "engaging in occasional standing/walking." (R. 1651.) However, as a chiropractor, Dr. Tevlin was not an "acceptable medical source." SSR 06-3p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Moreover, at the time Dr. Tevlin filled out the checkbox form regarding Plaintiff's need for a cane, she had been treating Plaintiff for less than two weeks. (R. 1650–51.)

visit and other visits throughout the period of alleged disability were generally normal with regard to musculoskeletal and neurological issues, and there are no objective findings in his treatment notes supporting an assessment of "generalized muscle weakness," problems with gait, problems with balance, or other specific findings that support the medical necessity for a cane.  (*See, e.g.,* R. 1448, 1453–57, 1538–39, 1543–50, 1635, 1643–48.)  Furthermore, the record does not reflect that Dr. Moche or Dr. Miskavige referred Plaintiff for an assessment or treatment of "balance issues" or lower extremity weakness.  Plaintiff points to a June 8, 2017, treatment note from Jenna Viland, a nurse practitioner, who saw Plaintiff for a complaint of lower left-sided back pain and found "limited flexion, extension, rotation secondary to pain," most likely caused by a muscle strain.  (R. 1648.)  But Plaintiff denied weakness in her extremities on that visit; Viland found 5/5 strength bilaterally in the lower extremities on physical examination; no mention was made of balance issues; and the treatment note says nothing about the use of or need for a cane.

Moreover, as SSR 96–9p provides, Plaintiff not only must show that she has a medical need for the cane to walk or stand, but also must offer evidence of the circumstances in which the cane is required so that the adjudicator can take those into account in determining her limitations.  1996 WL 374185, at *7.  The Eighth Circuit has not addressed what precise documentation is required to make that showing, but the Third, Seventh, and Tenth Circuits have required an unambiguous opinion from a physician stating the circumstances in which the assistive device is medically necessary.  *See, e.g., Tripp v. Astrue*, 489 F. App'x 951, 954 (7th Cir. 2012) (finding the treating

physician's statement that the claimant "does need a crutch" lacked the specificity to

establish whether the crutch was a medical necessity); *Staples v. Astrue*, 329 F. App'x

189, 191–92 (10th Cir. 2009) (finding the treating physician's statement that the claimant

"still uses a cane to walk" did not establish medical necessity); *Howze v. Barnhart*,

53 F. App'x 218, 222 (3d Cir. 2002) (finding the evidence of a cane's use did not

establish it was medically necessary even though the treating physician provided a

prescription for a cane and checked the box for "hand-held assistive device medically

required for ambulation" in a report).

　　In *Staples,* the Tenth Circuit agreed with the plaintiff that the ALJ had erred in

finding that the absence of a prescription for a cane was fatal to her claim that it was

medically necessary.  But the court declined to remand the case because the record did

not contain evidence of the need for the cane:

> We do not gainsay the references in the medical record to Ms. Staples' ongoing
> health problems. We acknowledge, for example, Dr. Wienecke's opinion that
> her left leg pain may be due to permanent nerve damage. *Id.* But SSR 96-9p requires
> more than generalized evidence of a condition that might require use of a cane. It
> requires "medical documentation *establishing the need* for a hand-held assistive
> device to aid in walking or standing, and describing the circumstances for which it
> is needed." 1996 WL 374185, at *7 (emphasis added). Such evidence is entirely
> absent here.

*Staples,* 329 F. App'x at 192.

　　Plaintiff also argues more generally that the ALJ failed to accord appropriate

weight to the opinions of Dr. Moche and Dr. Miskavige.  The ALJ accorded Dr. Moche's

opinion little weight because he concluded it was "not supported by the substantial

medical evidence for the same reasons discussed above in the analysis of Dr. Miskavige's

opinion," apparently a reference to a preceding paragraph in which the ALJ stated that he would give little weight to Dr. Miskavige's opinion because it "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported." (R. 33.)

Both Dr. Moche and Dr. Miskavige were treating physicians.  The opinion of a treating medical source should be considered controlling if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002). Conversely, an ALJ may discount a medical opinion if it is inconsistent with other substantial evidence, such as "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Prosch,* 201 F.3d at 1013 (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005).

Here, the ALJ discussed the objective findings in the medical records of both Dr. Miskavige and Dr. Moche, as well as in the records of other providers who assessed Plaintiff over the years.  He also cited reasons to believe Plaintiff's subjective account of her symptoms was somewhat exaggerated, including by reference to her activities (R. 31), and Plaintiff does not appear to challenge the ALJ's assessment of her subjective complaints.

Although it might have been possible to reach a different conclusion from the

record about Plaintiff's need for a cane, it is not for the Court to reweigh the evidence, but rather to confirm that the ALJ properly considered and reconciled or rejected the relevant medical evidence and reached conclusions that can be supported by substantial evidence on the record as a whole. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *Robinson*, 956 F.2d at 838. The Court finds that he did so. Accordingly, although the ALJ may have understated the evidence with regard to the frequency of Plaintiff's use of her cane, the record supports his conclusion that she did not establish the medical necessity for a cane, particularly given that he included in Plaintiff's RFC a limitation to indoor work.[10]

### 2.    Other Opinions from Treating Sources

Plaintiff also argues that the ALJ "essentially rejected" the opinions of 15 other health care providers. (Pl.'s Mem. Supp. Mot. Summ. J. at 24.) Except with regard to Dr. Moche, Dr. Miskavige, and Dr. Tevlin, discussed above, Plaintiff fails to analyze these opinions—or even to name the physicians whose opinions she believes received short shrift. Instead, Plaintiff argues generally that the ALJ accorded too much weight to unfavorable opinions. (*Id.* at 24–25.)

The ALJ provided a thorough review of the medical opinions in the record and his basis for according each the amount of weight he did. (R. 29–35.) "It is the function of

---

[10] Plaintiff reported on several occasions that she did not need or use the cane at home but used it only when "out in the community," noting in particular a concern about uneven terrain. (*See, e.g.,* R. 1903, 1949.) This provides additional support for the ALJ's conclusion that the limitation to indoor work where "floors are up to code" would adequately address any concerns.

the ALJ to weigh conflicting evidence and to resolve disagreements among physicians."

*Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).  This Court's job is much more

limited.  *Robinson*, 956 F.2d at 838.  Plaintiff does not specify the aspects of the ALJ's

analysis with which she disagrees or otherwise identify the facts to support her claim.

Defendant characterizes this argument as an "undeveloped argument," and the Court

agrees.  The Court is not required to address such undeveloped arguments or to reweigh

the medical evidence.  *See Melder v. Colvin*, 546 F. App'x 605, 606 (8th Cir. 2013);

*Aulston v. Astrue*, 277 Fed. App'x 663, 664 (8th Cir. 2008); *Vandenboom v. Barnhart*,

421 F.3d 745, 750 (8th Cir. 2005).  Accordingly, the Court recommends against

remanding Plaintiff's case on this ground.

### E.    The ALJ's Decision to Not Include Limitations Based on Plaintiff's Cervical Spine Disorder, Personality Disorder, PTSD, FM, Carpal Tunnel Syndrome, and Seizure Disorder

Plaintiff contends that several of her impairments were deemed by the ALJ to be

severe for the step three analysis but were not accounted for in determining Plaintiff's

RFC.  In particular, the ALJ found that Plaintiff had severe cervical degenerative disc

disease, personality disorder, posttraumatic stress disorder, fibromyalgia, carpal tunnel

syndrome, and seizure disorder due to partial epilepsy, but did not include limitations

related to those impairments in his RFC assessment.  (R. 21, 25.)  Plaintiff argues these

omissions amounted to "clear legal error because an ALJ must craft his RFC finding on a

function by function basis in alignment with the work restrictions from all of a claimant's

impairments."  (Pl.'s Mem. Supp. Mot. Summ. J. at 28.)

In arriving at Plaintiff's RFC, the ALJ was required to consider the limitations and

restrictions imposed by all of Plaintiff's impairments.  SSR 96-8p, 1996 WL 374184, at

*5.  Plaintiff does not and cannot argue the ALJ ignored these conditions because the

ALJ specifically called out each impairment and its basis in the record.  (R. 27

(discussing Plaintiff's fibromyalgia, cervical degenerative disc disease, and carpal tunnel

syndrome); R. 28 (Plaintiff's complex partial seizure disorder and posttraumatic stress

disorder); R. 29 (Plaintiff's dependent personality disorder and borderline personality

disorder).)  Instead, Plaintiff identifies additional limitations she believes he should have

included in her RFC but did not.  That is, Plaintiff is not claiming the ALJ missed an

impairment; she is arguing that he should have attributed additional or greater limitations

to those impairments.

     Again, Plaintiff provides little discussion to support her argument.  She offers a

string cite to favorable evidence, and little else.  A court cannot reverse an ALJ's decision

simply because some evidence supports a different conclusion, however, *Fentress v.*

*Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017), and there is also evidence to support the

ALJ's decision not to impose additional limitations, as discussed throughout this Report

and Recommendation.   As also discussed above, the ALJ's finding at step two or three

does not obligate the ALJ to then incorporate that finding into the RFC assessment.  To

the extent Plaintiff relies on a string cite of favorable evidence, without discussion of its

applicability to her limitations, the Court considers her argument undeveloped and

therefore waived.

     Moreover, the ALJ evaluated all of the evidence in the record and determined that

Plaintiff's fibromyalgia, cervical degenerative disc disease, carpal tunnel syndrome,

seizure disorder, posttraumatic stress disorder, and personality disorder did not warrant further limitations in Plaintiff's RFC.  (R. 27–29.)  Although it might have been possible to reach a different conclusion based on the record, it is not the Court's job to weigh the evidence anew, but rather to evaluate whether the ALJ's conclusions were reasonable. *See Robinson*, 956 F.2d at 838.  Here, the Court concludes the ALJ's consideration of Plaintiff's cervical spine disorder, personality disorder, PTSD, FM, carpal tunnel syndrome, and seizure disorder was supported by substantial evidence.

### F.    Whether the Court Should Award Benefits Rather Than Remand to the ALJ

Because the Court recommends a finding that the ALJ did not err in his assessment of Plaintiff's RFC, Plaintiff's argument that the Court should find outright that Plaintiff had the RFC only for sedentary work and was therefore disabled because of her age (Pl.'s Mem. Supp. Mot. Summ. J. at 30–31) is moot.  However, if the District Court disagrees and finds the ALJ erred, the Court would recommend remand rather than an immediate award of benefits.  Courts directly award benefits only when the record "overwhelmingly supports" a finding of disability.  *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992).  Otherwise, out of deference to the ALJ, a remand for further administrative proceedings is appropriate.  *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000).  The Court cannot conclude that the evidence of record overwhelmingly supports a finding that Plaintiff was limited to sedentary work, and therefore an immediate award of benefits would not be appropriate.

24

### G.     Whether the ALJ was Properly Appointed

Finally, Plaintiff argues that the ALJ's decision should be reversed because the ALJ was not properly appointed under the Constitution.  Plaintiff raises her claim after a recent Supreme Court case, *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018), determined that ALJs of the SEC are "Officers of the United States" and therefore subject to the Appointments Clause, U.S. Const. art. II, § 2, cl. 2.  The relief ordered in *Lucia* was a new hearing before a properly appointed ALJ.  138 S. Ct. at 2055.

Plaintiff submits that the ALJ who presided over her hearing was not properly appointed under the Appointments Clause and thus she is entitled to a new hearing. Plaintiff concedes she did not make this argument to the Social Security Administration.

The Commissioner responds that *Lucia* requires a "timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case."  *See* 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182–183 (2018)). Because Plaintiff did not raise her argument to the agency, the Commissioner asserts, her argument is waived.

The Eighth Circuit has concluded that a party forfeits an Appointments Clause claim by failing to raise it to the agency.  *See NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013).  Numerous district courts in the Eighth Circuit and nationwide have denied requests for remand made pursuant to *Lucia* on the ground that the plaintiff did not raise the Appointments Clause issue to the Social Security Administration.  *E.g., White v. Berryhill*, No. 18-cv-2005-LTS, 2019 WL 586757, at *15 (N.D. Iowa Feb. 13, 2019); *Catherine V. v. Berryhill*, No. 17-cv-3257 (DWF/LIB),

2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019); *Axley v. Comm'r, Soc. Sec. Admin.*,

No. 1:18-CV-1106-STA-CGC, 2019 WL 489998, at *2 (W.D. Tenn. Feb. 7,

2019); *Shipman v. Berryhill*, No. 1:17-cv-00309-MR, 2019 WL 281313, at *3 (W.D.N.C.

Jan. 22, 2019); *A.T. v. Berryhill*, No. 17-4110-JWB, 2019 WL 184103, at *7 (D. Kan.

Jan. 14, 2019); *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 905–06 (E.D. Mich.

Oct. 31, 2018).

      Here, Plaintiff did not raise her Appointments Clause argument to the Social

Security Administration.  It is therefore waived.

## IV.    RECOMMENDATION

      Accordingly, based on all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Plaintiff Patricia M.'s Motion for Summary Judgment [Doc. No. 16] be **DENIED**;

2. Defendant Andrew Saul's Motion for Summary Judgment [Doc. No. 21] be

   **GRANTED**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 5, 2020           *s/ Hildy Bowbeer*_____

                                  HILDY BOWBEER

                                  United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is
therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local
Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate
judge's proposed finding and recommendations within 14 days after being served a copy"
of the Report and Recommendation.  A party may respond to those objections within 14

days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and
responses must comply with the word or line limits set forth in LR 72.2(c).